IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO TIRADO-GARDÓN, NAYDA
AYALA QUIÑONES, GLORIMAR
OJEDA CRUZ, MARÍA Z. BURGOS
CORCINO, BETSY RAMOS
VELÁZQUEZ, MARITZA BONILLA
RODRÍGUEZ, MARÍA M. GARCÍA DE
QUEVEDO, WILLIAM CONDE
GONZÁLEZ, BILLY PAGÁN RIVERA,
ILSA PAGÁN IRIZARRY, CARMEN
DÍAZ ESPADA, MARÍA CAMACHO
CRUZ, MILAGROS M. SOLLA VARGAS,
ERNA CRUZ OYOLA, LAURA E.
FLORES BAGÚ, RUBÉN OTERO
ROSARIO, CARMEN M. REYES
ROSARIO, HILCA I. MARRERO
MARRERO, BRENDA MALDONADO
ORTIZ, AMARILIS RODRÍGUEZ
PÉREZ, WANDA I. AMADOR NEGRÓN,
ANA M. CRUZ MORALES, LUIS
BERRÍOS ARZUAGA, MARÍA DEL C.
RODRÍGUEZ GARCÍA, OTILIA QUIRÓS
TORRES, MARÍA E. REYES MORALES,
HILDA REYES COLÓN, MARÍA M.
SANTOS PORTALATÍN, DEBORAH
ACOSTA HERNÁNDEZ, ENRIQUE
SEDA DÁVILA, RAFAEL A. NEGRÓN
VARGAS, MAGALI RODRÍGUEZ
SÁNCHEZ,

Plaintiffs

v.

RAFAEL ARAGUNDE-TORRES,
Secretary of Education of the
Commonwealth of Puerto Rico,
WALDO E. TORRES, Deputy Secretary
of Education, INDIVIDUALLY AND IN
THEIR OFFICIAL CAPACITY, THEIR
AGENTS, EMPLOYEES AND
SUCCESSORS IN OFFICE,

Defendants

CIVIL 06-1044 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ON MOTION FOR PRELIMINARY INJUNCTION

CIVIL 06-1044 (JAG)                         2

Plaintiffs are allegedly tenured teachers dismissed from their positions by the Secretary of Education Rafael Aragunde Torres on December 28, 2005.  Questioning the method of and the motive for their dismissal, on January 18, 2006, plaintiffs, teachers in the Department of Education of the Commonwealth of Puerto Rico, filed a complaint against Mr. Aragunde Torres, and Waldo E. Torres, Deputy Secretary of Education of the Commonwealth of Puerto Rico, suing them in their individual and official capacities, and seeking injunctive relief and damages based upon their having been summarily dismissed after their tenures as teachers were annulled.  Alleging a property right in their positions, plaintiffs argue that the annulment of their positions and their dismissals are due to their being members and/or supporters of, and/or participants in activities organized by the Federation of Teachers, their labor relations representative.

Plaintiffs plead in their jurisdictional statement that this is a civil rights action filed pursuant to 42 U.S.C. § 1983, and its jurisdictional counterpart 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331.  Plaintiffs also plead violations of the First, Fifth and Fourteenth Amendments to the United States Constitution in seeking declaratory and injunctive relief, back pay, prejudgment interest, compensatory and punitive damages and other unspecified damages.  However, the ad damnum reflects that they each seek $904,000 and/or the amount that the jury may award them.  Plaintiffs also bring supplemental claims under article 1802 of the Civil Code of Puerto Rico, and the Civil Rights Act of Puerto Rico.

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

Plaintiffs' complaint alleges that they and about 900 other teachers were all granted tenure and/or regular status by former Secretary of Education César Rey

CIVIL 06-1044 (JAG)                          3

Hernández, notwithstanding that Alternate Teachers' Certificates had been issued to plaintiffs by former administrations of the Department of Education. (Docket No. 1, Complaint, at 4, ¶¶ 7, 8.) The granting of tenure or regular status to plaintiffs and 900 others was done, upon information and belief, when the Department of Education provided tenure or regular status to transitory employees who at the time had been full-time teachers for more than two years. (Id. ¶ 9.) They were employed thus because the Department of Education lacked teachers in certain areas.[1] Plaintiffs had registered and were in the process of completing most courses that were required of other teachers in order to obtain a Regular Certificate as a teacher within the Department of Education, notwithstanding the fact that upon granting tenure to plaintiffs, former Secretary of Education César Rey Hernández did not include or impose any condition for conferring the status, and Alternate Teacher Certificates had allegedly been issued to plaintiffs by former Department of Education administrations. (Id. ¶ 10.)

On August 25, 2005, the defendants issued to the plaintiffs and to 900 other teachers letters expressing that since they did not hold a Regular Certificate as a teacher, they had to complete all of the requirements to obtain such certificate before the end of the 2005-2006 school year. They were told that a 2001 federal law[2] had imposed that requirement, 2001 being a year after their tenured or regular status had been conferred to most of the plaintiffs. Notwithstanding Secretary Aragunde's having stated publicly that the Department of Education was in compliance with the federal requirements of hiring highly qualified teachers, he did not request prior to

---

[1] Plaintiffs have been teachers of English, special education, drama and theater, Spanish, Mathematics and other fields in the Department of Education. (Docket No. 1, at 2, ¶ 2.)

[2] The No Child Left Behind Act of 2001, 20 U.S.C. § 6301 et seq.

CIVIL 06-1044 (JAG)                    4

December 2005, an extension of one year (i.e., a waiver) in order to have more time to perform the changes in recruitment, as some states had done. (Docket No. 1, at 4-5, ¶ 11.) On December 7, 2005, Secretary Aragunde and Deputy Secretary Torres issued another letter to plaintiffs disregarding the August 25 letter directive, and expressing that since plaintiffs possessed only an Alternate Teacher Certificate, they did not have a right to tenure. (Id. at 5, ¶ 12.)

Due to the decision of the Secretary not to recognize their tenure, plaintiffs organized and participated in activities against the actions taken by the defendants, and their participation was acknowledged by the defendants. (Id. ¶ 13.) Finally, on December 28, 2005, the defendants sent another letter to the plaintiffs summarily dismissing them and not granting them the opportunity for a hearing.  They thus withdrew the tenure status awarded by Secretary Rey and summarily dismissed plaintiffs from their permanent jobs at the Department of Education. (Id. ¶ 14.)

Plaintiffs conclude that the defendants summarily annulled a property right conferred upon them, and did so because they are members of or supported activities of the Federation of Teachers, their labor relations representative, and without the benefit of a pretermination hearing, in violation of their constitutional and civil rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. (Id. ¶¶ 15, 16.) Plaintiffs emphasize that the defendants did not have any legitimate reason in order to withdraw their tenure and discharge them from their positions as teachers, except to discriminate against them since about 845 other teachers similarly situated were not discharged, and that such action was because of plaintiffs' association with the Federation of Teachers.  The defendants are accused of justifying their actions by relying on the directives of the No Child Left Behind Act of 2001, 20 U.S.C. § 6301 et seq., and decertifying teachers that do

CIVIL 06-1044 (JAG)                    5

not have a Regular Certificate as a teacher, this notwithstanding their allowing 850 teachers to remain in their positions without a Regular certificate. (Docket No. 1, at 6, ¶ 18.)

The hearings on the motion for preliminary injunction were held on January 27, February 1, and 2,[3] March 22,[4] and April 4 and 5, 2006. Plaintiffs filed a post trial memorandum of law on April 6, 2006 (Docket No. 51), and the defendants filed a post trial memorandum of law on May 8, 2006. (Docket No. 65.) Plaintiffs replied to the post trial memorandum on May 12, 2006. (Docket No. 66.) Defendants opposed the filing on May 18, 2006. (Docket No. 67.) Of the 32 plaintiffs, 15 have been recalled to work so that preliminary injunctive relief is being sought by the remaining 17 plaintiffs who have not been rehired.

Waldo E. Torres, Under Secretary for Academic Affairs, testified that several months ago, beginning in September, 2005, he had sent several letters to teachers and made certain reports in preparation for the visit of the United States Department of Education which was sending a "highly qualified teacher" team to analyze the implementation of the No Child Left Behind Act of 2001 in Puerto Rico. Mr. Torres spent most of September, October and November, 2005 resolving which teachers would be able to comply with the May 2006 deadline of the No Child Left Behind Act.  See 20 U.S.C. § 6319(2) & (3).  The applicable teachers were sent a letter signed by him as Acting Secretary of Education on August 25, 2005,

---

[3]A hearing had been scheduled for February 6 but was continued because of a motion to stay and dismiss under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814-15 (1976), filed by the defendants on the same day, a motion which was ultimately decided against defendants.

[4]A hearing had been scheduled for March 30 but was continued in order to attempt a streamlining of the proceedings.

CIVIL 06-1044 (JAG)                           6

instructing teachers that they must comply with the requirements of the Act by the end of the school year 2005-2006. (Exhibit 1.) During this process, Mr. Torres also consulted with Secretary Aragunde.

When questioned regarding Form 409, a personnel action change form, Mr. Torres explained that it is not part of his duties to be familiar with Form 409. He has never read Form 409 in any personnel file. Mr. Torres read the reports in preparation for the monitoring visits of 2005 from the United States Department of Education, the purpose of which was to determine compliance with the federal requirements. Regarding waiver, Mr. Torres testified that there are no waivers to the regulations applicable to Puerto Rico, including the rural areas, in relation to highly qualified teachers in the No Child Left Behind Act.

Mr. Torres' best interpretation of the law is that Puerto Rico does not meet the waiver requirement to comply with the highly qualified teacher provision, and focused on core academic subjects, which according to Mr. Torres are Mathematics, Spanish, English, Social Sciences, and Science. The Department of Education does not identify those subjects.

Mr. Torres testified that plaintiff teachers were dismissed because they did not possess a Regular Teachers Certificate and that was a requirement to be a highly qualified teacher. Furthermore, because the teachers were not going to qualify with the requirements of the No Child Left Behind Act of 2001 within the allotted time, they were dismissed. Mr. Torres said he had told the United States Department of Education that the teachers were not at 100%. Ninety-six percent of the teachers had regular certification according to the records. Sixty-seven were not going to be able to qualify by the May, 2006 deadline.

CIVIL 06-1044 (JAG)                    7

Referring to a Form 409, Mr. Torres said that while he was not familiar with the same, according to the Form 409 located in the teachers' personnel files, teacher Ana Cruz Morales' status, for example, was permanent.  According to the Form 409 of teachers Luis A. Berríos Arzuaga, María de los Ángeles Camacho Cruz, Milagros M. Solla Vargas,  Maritza Bonilla Rodríguez, María Burgos Corcino, and María García de Quevedo,[5] they all possessed regular status.[6]

Aida Díaz Rivera de Rodríguez, President of the 27,000 member Asociación de Maestros as of January 9, 2001, testified that the Department of Education dismissed 67 teachers in 2005 and that she met with 59 of the 67 teachers who wanted legal assistance.  Not all of those teachers are members of the Asociación which was founded in 1911.  As a result, she met with Secretary Aragunde once and gave him documents which included credit transcripts from 30 to 40 teachers who had teaching certificates and had asked for reconsideration.  She did not meet with the Secretary again.

Rafael Aragunde Torres, Secretary of Education, testified that he signed the August 25, 2005 letter, with attachments,  notifying the teachers that they did not hold a regular teaching certificate (Exhibit 1) although he had not seen the attachments before.  The teachers were asked to submit evidence that they had met the No Child Left Behind Act requirements and that they should submit such evidence by September 15, 2005, in order to comply with the No Child Left Behind Act.  The Secretary noted that there was no evidence that these particular teachers had regular teacher certifications.  Of those 67 teachers involved, 32 are plaintiffs

---

[5]Exhibits 10, 19, 20, 24, 27, 28.

[6]The defendants accepted an offer of proof that all of the Forms 409 of the plaintiff teachers would reflect a regular status.

CIVIL 06-1044 (JAG)                    8

in this case.  Those 67 teachers were given until the end of the 2005-2006 academic year to complete the No Child Left Behind Act requirements, as established by the law.  See 20 U.S.C. § 6319(2).  Referring to the letters signed by Under Secretary Torres, he agreed with the dismissal letters sent on December 28, 2005.  (Exhibit 4.)

Secretary Aragunde met with Aida Díaz Rivera of the Asociación de Maestros, on or about January 12 or 13, 2006, during her visit to his office where they talked about the dismissals of December 28, 2005.  She was concerned and interested in the dismissed teachers.  While there was talk of his willing to solve the ongoing problem, his conclusion remained that the appointments were illegal.  The Secretary also spoke with the president of the Federación de Maestros, Rafael Feliciano, after Three Kings Day (January 6, 2006).  They generally spoke about the dismissals of the teachers.  The Secretary denied that he told Rafael Feliciano that they would be reinstated if the teachers did not push for tenure status.  The Department's position on tenure was clear, and there was no negotiation in that respect.  Twenty-six or 27 of the discharged teachers got their jobs back.  Thirty-two teachers are in this case. While there was no pretermination hearing for the teachers, the teachers were provided interviews and they all had to submit supporting documents.[7]  The reason that there were no pretermination hearings is because the terminations were not for disciplinary reasons.[8]  Furthermore, the Secretary felt that the teachers could not

---

[7]Regulations state that before a dismissal, charges have to be filed and an administrative hearing held.

[8]In order to be dismissed from permanent or regular positions, a teacher must have administrative charges filed against him, and a hearing must be afforded.  See Rodríguez v. Secretario de Instrucción Pública, 92 D.P.R. 874, 880 (1965).

CIVIL 06-1044 (JAG)                              9

request a waiver.  Looking at Exhibit 5 (Waiver of Provisions),[9] Secretary Aragunde noted that the waiver applied to the No Child Left Behind Act and plaintiffs had to comply with the Act but he assured that no waiver was possible under the Act and the waiver did not apply to the Highly Qualified Teacher requirements, that it is not spelled out in the No Child Left Behind Act, although it is implied.  He stressed that, according to his own interpretation, one cannot ask for a Highly Qualified Teacher waiver if there is a waiting list of Highly Qualified Teachers.  Newly hired teachers were in fact highly qualified teachers.  Of the 67 teachers who received letters of dismissal, 20 were later given jobs after evaluation, because they submitted documents, and planned to finish their studies.  Forty were without work in the Department.  Because those 20 could comply with the requirements of the Act, they were taken back.  The Secretary noted that he was willing to negotiate and was still willing to help all 67 teachers finish their studies.

Ramonita Rodríguez Nogue, Department of Education Director of Teacher Professional Development, testified that in August and September, 2005, she spoke to many plaintiffs and had interviewed between 100 and 150 plaintiffs, explaining that she had been tasked to receive evidence of their qualifying as Highly Qualified Teachers.  She was still talking to teachers.  Evidence received was sent to the certification office, which verified if the requirements were met for them all to qualify by the end of the school year 2005-2006.

According to the requirements of being a highly qualified teacher, the teacher is required to have a bachelor's degree, to be fully certified in the subject he teaches, and to have competency in that subject.[10]  The law refers to all teachers, whether

---

[9]Title 20 U.S.C. § 7861.

[10]See 20 U.S.C. §§ 6319(a)(2); 7801(23)(A)(i-ii).

CIVIL 06-1044 (JAG)                         10

transitory, regular, or permanent.  Ms. Rodríguez explained that there were three types of certification consistent with Law 94 of 1955: regular(full), provisional, and a lifelong certification.  The Alternate Teachers Certificate was the product of an amendment to the regulations approved by Víctor Fajardo and then governor Pedro Rosselló González on May 15, 2000.  According to the amendment to the regulation, the alternate teacher certification was valid for five years, and the teachers did not have to meet the Regular Teacher Certificate requirements.  Under César Rey Hernández, the teachers were given permanent status under a provision that called for permanent status automatically after complying with a two-year probationary period. Sixteen hundred teachers were covered by the amendment and received the Alternate Teachers Certificate.  Beginning in January and February, 2003, Ms. Rodríguez started working with the teacher issue of determining full state certifications.  Mrs. Lissette Pillich was in charge of the entire review process, and Under Secretary Torres tasked her with this mission.  Mrs. Pillich's immediate supervisor was Carmen Rosario, Assistant Secretary for Human Resources.  When the planning was started under the No Child Left Behind Act, it was learned that 1,600 teachers did not comply with the Act.  These teachers were notified in February and March 2003 via memo (institutionally but not personally) through superintendents.  In 2003, the Department of Education had developed certification projects for the 1,600 teachers.  Seven hundred teachers were able to obtain their Regular Teachers Certificate within the five-year term.  Of the 900 remaining teachers which remained without certification, 67 were dismissed because they could not be certified by the end of the school year 2005-2006.

Mrs. Pillich was part of the committee which determined whether or not the teachers met the requirements.  The makeup of the committee varied in

CIVIL 06-1044 (JAG)                              11

membership. Sometimes there were three, sometimes four members. The committee had no formal name. The plan was to have 100% Highly Qualified Teachers by the end of the 2006 semester. The law refers to all teachers, regular or transitory. If the teachers did not comply with the three requirements, in terms of degree, certification and competency, they did not qualify. Even the College Board examination was given early (November 2005 instead of March 2006) to assist the teachers to comply. Certain education requirements could not be met because no university presented a proposal. The Department of Education had to depend on the universities. One hundred percent of teachers who asked to take courses were authorized to take them and the Department of Education paid for the course.

Agnes Fuentes Maldonado, of the Department of the Administration of Educational Services, testified that she worked at the certification office from February 1994 to September 2005. She signed both letters, dated March 12 and March 14, 2005, attached to Exhibit 1. Ms. Fuentes went into the details of records she had reviewed at the certification office and certain teachers' academic requirements relating in particular to Hilda Reyes Colón whom she evaluated but did not notify of the results. About eleven people conducted the evaluations. Ms. Reyes Colón's academic information was received from the academic file. (Exhibit 14.) The August 25, 2005 letter did not appear in her file. Ms. Reyes Colón received no notification prior to August 25, 2005.

Ms. Reyes Colón had to complete 21 credits in a concentration of fine arts, according to her academic file. She had 45 credits approved in elementary education and had a 3.09 average when the regulations required a 2.50. According to her Form 409s, on August 12, 1996, her status was provisional transitory. On August 5, 1997, it was the same and continued the same until 1999. The last

CIVIL 06-1044 (JAG)                    12

evaluation was in 2000, based upon the 1997 regulations. A form of change of July, 2002 reflected that the status was permanent. It was signed by Ms. Pillich and approved by the Secretary or his representative. Another report of change was dated June 1, 2004 and the left hand side of the document reflects the status of regular, which is the same as permanent.

According to the witness, Ms. Reyes Colón had received an Alternate Teachers Certificate which was now expired. She had many provisional certificates and had been in the private education system for one year. Her bar examination had expired.

Teacher Erna Cruz Oyola[11] testified that she has approved 39 credits toward her masters degree, and enrolled in a private school, that is, Caribbean University of Bayamón where she studied at night for a certificate in K-3 Education from January to June 2004, and paid for by the Department of Education, funded under Title II. She held a transitory certificate until May 6, 2002 since she received a Form 409 letter changing her status to permanent. Ms. Cruz Oyola received a letter from Secretary Aragunde (Exhibit 1) although she said she did not receive the two attachments, which were evaluations under two different regulations. She was told at the certification office that she could not receive a teacher's certificate because she had been dismissed. After a review of her correspondence, she was then told that she was qualified. She believed that she complied with the requirements of the March 28, 2005, which she had not received, because she received a Regular Teachers Certificate, according to what Lydia Huertas of the technical office told her in January 2006. Elena Hernández of the certification division told the witness that she had completed the requirements and was only missing her original transcript

---

[11]Ms. Cruz has been reinstated.

CIVIL 06-1044 (JAG)                          13

to have the certificate issued.    The original university transcript arrived on January 17, 2006.  Her filed was noted with Regular Teachers Certificate Primary Level K-3.  On January 12, 2006, she was dismissed.

Amarilis Rodríguez Pérez[12] of Barranquitas, teacher, testified that she holds a B.B.A. awarded in 1986 and is in the process of obtaining an M.A.  She holds certificates as educational technical specialist and resource teacher for computer use.  She was evaluated and was told she needed additional credits so she took 21 credits in mathematics.  She went through a probationary period and received her permanency in May 2002.  As a result of the 2005 evaluation, she received two certificates valid until 2012.  (Exhibit 38.)  She received a letter on December 30, 2005 and went to the Department of Education Certification Office on five occasions. There she spoke to Ms. Becerra and Hilda Aponte who said they were waiting for Ms. Rodríguez' college transcripts to proceed with the certificates.  Ms. Rodríguez acknowledged that she had received a letter noting that she required 21 credits in physics, although she did not teach physics.  She took the special bar examination in November 2005 and passed.  She did not ask for a certification in physics.  She never received a letter in her file (Exhibit 8) which had the requirements related to physics. The transcript was received on January 19 or 20, 2006 but she had already been dismissed.  While she was told she was being evaluated in physics, she had never taught physics.  She has taught educational technology for seven years. She later received a teacher's certificate as specialist in educational technology on January 20, 2006, signed by Secretary Aragunde.

---

[12]Ms. Rodríguez has been reinstated.

CIVIL 06-1044 (JAG)                              14

Laura Flores Bagú,[13] teacher,  testified that she holds a B.A. in Social Work and has worked in the Department of Education as a teacher, counselor, social worker and that in the year 2000 she was given the status of probationary elementary school teacher.  In May 2002, she received permanent status and appears as a K-3 Early Education teacher on the roster of the Department of Education.  She taught in Vega Baja for six years at the María Negrón Collazo I School, until December 15, 2005.  She never received a letter from Secretary Aragunde dated December 28, 2005 or attachments.  She was never evaluated and had requested an evaluation in 2004.  Elena Hernández at the Department of Education gave her copies of the letters and told her there was no problem.  There was disagreement at the Department of Education with the number of credits she had completed to comply with requirements.  She took a course at Caribbean University and paid for it herself. She worked for the Department of Education since 1982 and had no certificate in social studies, Spanish or counseling, and no certifications as of February 2, 2006.  Her bar exam had expired.  She held an Alternate Teachers Certificate although she has never seen a document.  She never had a Regular Teachers Certificate although she had been given a probationary status.  She was given a permanent status without having a certificate.  She had requested evaluations in 2000 and was not then evaluated.  She said she had never seen any documents relating to the requirements for Regular Teachers Certificate. Ms. Flores said she was at present taking courses and was following the steps to have the documents up to date.

_____

[13]Ms. Flores has been reinstated.

CIVIL 06-1044 (JAG)                    15

Nayda Ayala Quiñones[14] testified, adopting her declaration under penalty of perjury. (Exhibit 40.) On August 25, 2005, she received a letter from the Secretary Aragunde which listed the requirements for a Regular Teachers Certificate. She was told that she was to present evidence of having satisfied the requirements by September 15, 2005. She had received two evaluations, one in 2000 and another in 2004. On December 12, 2005, she was told she had to present evidence of the requirements. On January 10, 2006, she enrolled at Interamerican University in two courses she was missing. On January 19, 2006, she presented evidence that she would be completing the requirements by May 2006.

Ms. Ayala testified that she was granted tenure in 2002 and held an Alternate Teachers Certificate to teach kindergarten through third grade. She did not hold a Regular Teachers Certificate. She said she was tenured because she had met the requirements and had worked for two years in the same position and had the years of experience. Making reference to the letters she had received, she noted that the letters did not say the teachers were to be fired, but that they would have a meeting. She then went to the certification office. She was missing 15 credits. While she taught kindergarten to third grade, she was told she would be evaluated for fourth to sixth grade. She was also told that she needed two classes. She met with Ramonita Rodríguez and asked her which courses she needed. She took both courses and took the teacher certificate test on March 18, 2006. On January 19, 2006, she ran into Secretary Aragunde and notwithstanding a conversation with him, she was told by Eleanor O'Neill that she was still dismissed and that there was no appointment and no agenda for those teachers who had been dismissed.

---

[14]Ms. Ayala has been reinstated.

CIVIL 06-1044 (JAG)                    16

Otilia Quiroz Torres[15] testified, adopting her declaration under penalty of perjury. (Exhibit 66.) She received an Alternate Teachers Certificate in May 2000 which expired on May 5, 2005. On August 25, 2005, she received a letter and was told she had to comply with requirements in order to receive a Regular Teachers Certificate. The letter said she needed 24 credits in order to qualify for a Regular Teachers Certificate. She had taken the teacher's examination. She had a 2.2 average and her tenure was obtained with an Alternate Teachers Certificate. She received a letter on March 17, 2006 which said she had a practice requirement but she considers 15 years of teaching theater sufficient practice. She could not take theater courses because she worked and the courses were given during working hours. When she was dismissed, she could not register for the courses because she had no money.

Itza Pagán Irizarry,[16] testified, adopting her declaration under penalty of perjury. (Exhibit 49.) She received an Alternate Teachers Certificate in 2000 which expired in July 2005, and does not have a regular certificate although she was tenured in 2002. Her Alternate Teachers Certificate was in social studies. She has been in and out of probationary and transitory positions. She stressed that she was in a permanent position and never received any document to that effect. The expiration of any certificate was not explained. She received a letter stating she was missing 12 credits and had a G.P.A. of 2.32. She testified that she had complied with requirements to obtain a Regular Teachers Certificate.

Billy Pagán Rivera testified, adopting his declaration under penalty of perjury. (Exhibit 48.) He stated that he received an Alternate Teachers Certificate in May

[15]Ms. Quiroz has been reinstated.

[16]Ms. Pagán has been reinstated.

CIVIL 06-1044 (JAG)                    17

2000, although he was not allowed to see it, and it was good for five years.  He has laryngitis and lost the treatment because he lost his job.  He received a letter on August 25, 2005 saying he needed 27 credits and a bar examination.  He was evaluated by the Department of Education Central Office on December 19, 2005.  He was then shown his personnel file (Exhibit 12) and his plan was that by June 2006, he would complete the requirements which were in general science.  There was a memo that with 18 post graduate credits he would qualify for the certificate.

Betsy Ramos Velázquez testified, adopting her declaration under penalty of perjury.  (Exhibit 34.)  She testified that she received a letter stating she needed 24 credits but when she went to the Department of Education, she was told by Ramonita Rodríguez that she needed 15 credits.  She then went to Turabo University and applied to get 15 credits.  The Department of Education gave her the money to study.  Then she was dismissed and had to leave her studies.  In May 2005, she had an Alternate Teachers Certificate and does not possess a Regular Teachers Certificate.  She taught English from 1984 to 1996, and after 1996 she taught fourth grade, all classes, except for English.

William Conde González testified, adopting his declaration under penalty of perjury.  (Exhibit 26.)  He testified that he was evaluated in Ponce on January 18, 2006, although not by the Department of Education.  He had the evaluation because the Department of Education told him he needed certain credits.

Teacher Maritza Bonilla has 27 credits pending and has a G.P.A. of 3.0.

Lizzette Pillich Otero, Deputy Secretary for Human Resources of the Department of Education, and head of the Division of Teachers Certification and Professional Development, testified that she has worked for the Department of Education for about 21 years, and has been in a career position since July, 2005.

CIVIL 06-1044 (JAG)                    18

She had previously been in a trust position.  César Rey Hernández had suspended her from employment in October 2004 regarding some irregularities in the appointment of non-teaching personnel.  She was then reinstated and placed in a career position, a position she had held since 1985, after participating in the administrative process.  She holds a B.A. in Spanish, an M.A. in Human Resources Administration and a Ph.D. in Educational Administration.  Ms. Pillich is familiar with the Alternate Teachers Certificate which resulted from an amendment to the teacher certification regulations made on May 5, 2000.  She investigated the issue of teachers holding these certificates and saw the files of the teachers holding Alternate Teachers Certificates, especially the Form 409, the change appointment report form which changed the status from transitory provisional to regular probationary.  Another report came out in 2002, which was produced by the Department of Education Computer Center and it provided for automatically changing the status of regular probationary to permanent.  She had no participation in the production of these forms.  Part of the requirements for permanent status was to obtain a Regular Teachers Certificate for which the teacher must compete, that is, appear on the register of eligible candidates, based upon Law 94 of June 21, 1995 and Law 312 of May 15, 1938.  The law of permanence requires a Regular Teachers Certificate.  In relation to the teachers tenured in 2000, she received a legal opinion and also investigated.  Law 94 did not provide for Alternate Teachers Certificates. The Department of Education evaluated the files in 2002, 2003 and 2004 and teachers were required to request a Regular Teachers Certificate.  It is the teacher's responsibility to submit the necessary documents.  Once submitted, the teachers are notified and told to submit additional documents if necessary.  On December 15, 16, 19, 20, 2005, teachers with Alternate Teachers Certificates were interviewed at

CIVIL 06-1044 (JAG)                    19

meetings in order to determine if they fulfilled the requirements of the regulations. Sixteen hundred teachers had received Alternate Teachers Certificates. By December 2005, over 700 got Regular Teachers Certificates.

Dr. Pillich noted that a collective bargaining agreement exists for the teachers to address complaints and grievances.   The remedy is to resort to the Labor Relations Board. The certification division received visits from the teachers with the Alternate Teachers Certificates and gave them guidance as to what requirements they had to fulfill.  No distinction was made as to when the teachers had received their Alternate Teachers Certificates. The division did not participate in the decision to terminate the teachers.  She reviewed the files for four days and interviewed possibly 30 to 40 teachers.  Although there were no interviews after December 20, 2005, the Department continued to work and awaited the results of teacher certification tests which had been taken in November 2005.  About 200 teachers who only needed the examination results sent the results to the division and those files were set aside.  Not all of them passed the test.  If they did not pass, they did not receive a certification.  The division then did not attend to any teachers until after the Christmas holidays.

Plaintiffs seeking preliminary injunction proffered cumulative evidence which reflects that they had been discharged and had not been reinstated.  Part of that proffer is that the teachers were granted tenure or regular status under the administration of César Rey Hernández, which lasted from 2001 to 2004, after being in probationary status for at least two years. Such tenure imposed no conditions for such status, notwithstanding that Alternate Teachers Certificates had been issued to them by former administrations.  All were issued letters on August 25, 2005 (with two attachments) stating they did not hold a Regular Teachers Certificate and

CIVIL 06-1044 (JAG)                    20

that they had to complete the requirements by the end of the 2005-2006 school year. Eight-hundred and fifty teachers were allowed to work without having a Regular Teachers Certificate.  Plaintiffs participated in public activities organized by the Federación de Maestros, their certified labor representative, against the decision taken by the defendants.

Among the things unemployed plaintiffs have in common are the following: according to personnel files, and declarations subject to perjury, (Exhibits 41, 43, 44, 47, 48, 50, 51, 54-58, 60, 61), all received an Alternate Teachers Certificate, and then were granted regular status after being in a probationary status for two years. More specifically, they stress that they were awarded tenure (regular status) by former Secretary César Rey Hernández.  No conditions were imposed in order to continue in that regular status.  They had received Alternate Teachers Certificates in May 2000, which were valid for five years,[17] under the amendment to the regulations signed by Víctor Fajardo and Pedro Rosselló González.  (Exhibit A.) They claim for the most part that someone at the Department of Education such as Elena Hernández, Hilda Aponte, or  Ramonita Rodríguez, told them there was a mistake in their discharge, or that they could qualify by the end of the 2005-2006 school year by presenting missing evidence from learning institutions or government agencies.  Some teachers held no certificate at all at the time of the hearing but they did have pending requirements.  None of the teachers had seen any document giving them either an alternate or a permanent certificate.  The teachers uniformly showed a great interest in resolving the problem of deficiencies in their records, but some of those measures were taken or finalized after December 28, 2005.

_____

[17]The Alternate Teachers Certificates expired no later than July 31, 2005.

CIVIL 06-1044 (JAG)                          21

PRELIMINARY INJUNCTION

The First Circuit uses a four-part test for determining whether litigants are entitled to preliminary injunction relief.  Under the applicable framework, a trial court must consider "(1) the likelihood of plaintiff's success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect . . . the court's ruling [will have] on the public interest."  Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996) (citing Weaver v. Henderson, 984 F.2d 11, 12 n.3 (1st Cir. 1993)); see Rosario-Urdaz v. Rivera-Hernández, 350 F.3d 219, 221 (1st Cir. 2003), appeal after remand, 433 F.3d 174 (1st Cir. 2006); Water Keeper Alliance v. Dep't of Def., 271 F.3d 21, 30 (1st Cir. 2001); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); see also DeNovellis v. Shalala, 135 F.3d 58, 62 (1st Cir. 1998).

(1) The Likelihood of Plaintiff's Success Causes of Action

At the stage of preliminary injunction, a trial court "need not predict the eventual outcome [of the case] with absolute assurance, [but rather make a] 'statement as to the probable outcome[]'" of the case.  Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d at 16 (quoting Narragansett Indian Tribe v. Guilbert, 934 F.2d at 6).  With this standard in mind, I consider plaintiffs' claims at this preliminary stage in terms of probable success on the merits.

Plaintiffs' main principle upon which they base their civil rights complaint is their having been granted tenure or regular status, and thus a property interest in their continued employment, by former Secretary of Education César Rey Hernández, and that such granting of regular status did not impose any condition

CIVIL 06-1044 (JAG)                          22

for maintaining such status.  Such status was granted by the then Secretary of Education to all teachers who had been transitory employees who had been full-time teachers for  more than two years.  They all had Alternate Teachers Certificates.  These Alternate Teachers Certificates were given to teachers for a five-year period, in order to fill a demand for teachers.  The teacher was certified in the level and subject specified in the certificate.  (Exhibit A.)  Such certificate was arguably awarded pursuant to regulations in conformity with Act 94 of June 21, 1955.  The defendants argue that it is questionable whether the May 2000 amendment, which provided for a new category of teacher for a short period of time, complied with the Act.  The Alternate Teachers Certificate eliminated the need to comply with any procedural or academic requirements needed to obtain a Regular Teachers Certificate.  Thus, the validity of the 2000 amendment to the 1997 Act is subject to interpretation, and facially fails to comply with the requirements of Law 94.

Act 94 regulates the certification of teachers.  According to the clear reading of Act 94, teachers must possess one of two types of certificates:  a Regular Teacher's Certificate, or a Provisional Teacher's Certificate.  P.R. Laws Ann. tit. 18, § 260(1) & (2).  Teachers must hold a regular license or certificate.  The defendants argue that plaintiffs have never held a validly issued Regular Teachers Certificate.  They possess an Alternate Teachers Certificate which expired on July 31, 2005.  The Alternate Teachers Certificate was created through an amendment to the Regulations for Teacher's Certification of 1997.  In 2000, the Secretary of Education, with the approval of the then governor, amended the regulation of 1997.  A new category for teacher certification, Alternative Teachers Certificate, was thus created.  Again, it allowed for a five-year term and eliminated the requirement to comply with the procedural and academic requirements needed to obtain a Regular Teachers

CIVIL 06-1044 (JAG)                    23

Certificate.  Plaintiffs clearly have one of two statuses.  They focus on the legitimacy of their employment status and right to continue in employment.  If their regular status is valid, then they are covered by the Collective Bargaining Agreement for the purposes of the labor grievance which includes reinstatement.  Such agreement is binding as a matter of law between the parties, although the courts protect related rights which may not find redress under a Collective Bargaining Agreement.  See, e.g., Morales-Vallellanes v. Potter, 339 F.3d 9, 17-18 (1st Cir. 2003).  If their appointment is null and void, then they have no property right under state law and no due process constitutional question is presented. See Morales-Torres v. Santiago-Díaz, 338 F. Supp. 2d 283, 291 (D.P.R. 2004); Vélez-Rivera v. Agosto-Alicea, 334 F. Supp. 2d 72, 88-89 (D.P.R. 2004), aff'd, 437 F.3d 145 (1st Cir. 2006); Gómez-Marrero v. Aponte-Roque, 666 F. Supp. 7, 8 (D.P.R. 1987).  Furthermore, all plaintiffs previously held Alternate Teachers Certificates, that is, not Regular Teachers Certificates.  Thus when they obtained a regular status based on Alternate Teachers Certificate, such a change of status was probably contrary to law, regardless of whether the Secretary of Education at the time changed their status. The amendments to the regulations refer to the statutory authority for issuing the regulations in 2000.  However, this is where the creation of the new category occurs, a category not contemplated by Law 94.  Plaintiffs' pleadings repeat that César Rey Hernández granted them the status they seek to enforce, suggesting that the regulations have the force of law, regardless of whether such action is not supported by the actual legislation.  Crucial to their claim is the property interest in continued employment.

CIVIL 06-1044 (JAG)                    24

PROPERTY INTEREST

There is no doubt that individuals hold a property interest in career oriented employment.  See, e.g., Cotnoir v. Univ. of Me. Sys., 35 F.3d 6, 10 (1st Cir. 1994); Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988).  Such a continued right to employment, a property right, is based upon state law. "The pre-termination process due a government employee is a matter of federal law, whereas the preliminary question whether a government employee possessed a recognizable 'property right' or a legitimate expectation of continued employment, is controlled by the employment contract or state law.  Rivera-Flores v. P.R. Tel. Co., 64 F.3d 742, [750] (1st Cir. 1995).  Therefore, [as plaintiffs have pointed out,] if a career employee is fired, due process requires that they receive a pre-termination hearing. Maldonado Agueda v. Montalvo, 826 F. Supp. 47, [51] (D.P.R. 1993) (citing Cleveland Bd. of  Educ. v. Loudermill, 470 U.S. 532, 538-47 (1985)). [However,] under Puerto Rico law, an employee's property right in a career position is void if the employee acquired that position through a violation of the Puerto Rico Personnel Act.  Kauffman v. P.R. Tel. Co., 841 F.2d at 1173."  Vélez Rivera v. Agosto Alicea, 334 F. Supp. 2d at 88.

If a regulation is promulgated by an executive authority which fails to comply with the requirements of statute, no property interest results from such promulgation.  These dismissals were the result of a lengthy, rigorous, review process the greater part of which excluded early teacher input.  It included an imperfect method of notification of warning letters, and interviews where teachers were informed of apparent deficiencies in the personnel files and qualification requirements.  Notwithstanding this observation, due process requires notice and opportunity to be heard.  See, e.g., Rosario Urdaz v. Velazco, 350 F.3d at 224.

CIVIL 06-1044 (JAG)                    25

However, there is no presumption of validity in the appointments in question. That the teachers had the opportunity to present documentary evidence to clear up deficiencies, and that they were each summoned and confronted with the deficiencies and the opportunity to correct the same complies with the flexible due process requirement. The teachers knew they had Alternate Teachers Certificates which expired in five years, in 2005. The hearing required by Due Process does not have to have the formality of an evidentiary proceeding. See, e.g., Brasslet v. Cota, 761 F.2d 827, 836 (1ˢᵗ Cir. 1985); Morales-Torres v. Santiago-Díaz, 338 F. Supp. 2d at 293; Cepero-Rivera v. Fagundo, 301 F. Supp. 2d 103, 108-10 (D.P.R. 2004), aff'd, 414 F.3d 124 (1ˢᵗ Cir. 2005). Rather the aggrieved party has to have had the opportunity to present his or her side of the story. In a due process claim stemming from the termination of employment, "a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed." Acevedo-Feliciano v. Ruiz-Hernández, No. 04-1154, slip op. at 12 (1ˢᵗ Cir. May 11, 2006) (quoting Wojcik v. Mass. State Lottery Comm'n, 300 F. 3d 92, 101 (1ˢᵗ Cir. 2002)); see Cheveras Pacheco v. Rivera González, 809 F.2d 125, 127 (1ˢᵗ Cir. 1987).

At worst, the status which appears on the numerous Forms 409 can be considered null and void, notwithstanding the defendants accepting that the Form 409 contained in each personnel file contains a notation that their status is either regular or permanent. However, this does not put an end to the inquiry. The interpretation of the applicable federal law that it provided for no waiver even in rural areas in Puerto Rico, and that the No Child Left Behind Law provides for no waiver was provided by the Secretary. The Secretary of Education interpreted this provision as not allowing for waivers particularly if High Quality Teachers were

CIVIL 06-1044 (JAG)                    26

available.  However, if it did, such a waiver did not require that it be applied by the Secretary across the board and indeed, waivers are not favored in the No Child Left Behind Act.  A reason for the terminations of plaintiffs among the 67 teachers that were terminated, that they did not qualify under the definition of Highly Qualified Teacher, and that they were not going to be able to comply with the statutory framework and regulatory requirements by the end of the school year 2005-06, is a valid, legitimate reason for the discharge of certain teachers.  The No Child Left Behind Act is not an easily implemented directive to the states, but failure to meet the requirements can result in Draconian action by the federal government, including privatization of schools, or school districts failing to comply,[18] the loss of federal education dollars, and allowing students to transfer to schools in compliance with the requirements.[19]  The Act imposed challenging conditions which the states have to meet if they want to receive federal funds for their educational systems.

The Secretary of Education has the responsibility under local law to provide an adequate education for our children.  After the No Child Left Behind Act of 2001, the Secretary has the further responsibility and commensurate burden of assuring that these children are provided Highly Qualified Teachers so that they are not left behind.  The reasons for the Secretary of Education's recent actions are supported by state and federal law.

A review of the regulation for the certification of teachers filed on November 16, 2000 reveals that it provides for three types of certificate, Art. 5.3 Regular Certificate, which is valid for six years, and renewable for an additional six years; Article 5.4 Lifelong Certificate, which requires compliance with Law No. 94

---

[18]Title 20 U.S.C. § 6316(b)(8)(B).

[19]Title 20 U.S.C. § 6316(b)(5)(A).

CIVIL 06-1044 (JAG)                    27

of June 21, 1995, as amended, P.R. Laws Ann. tit. 18, § 268; and Art. 5.5 Provisional Certificate, which provided for a provisional certificate valid for no more than one year, in accordance with the provisions of Article 2 of Law No. 94 of June 21, 1995, as amended, P.R. Laws Ann. tit. 18, § 270.  Nowhere in the published regulation does the Alternate Teachers Certificate appear.  Similarly, a review of the regulation for the certification of teachers (personal docente) filed on February 4, 2004, which abrogated the 2000 regulation, yields an identical result. Again, nowhere in the published regulation does the Alternate Teachers Certificate appear.

Plaintiffs continuously refer to their tenured status, emphasizing their years of experience teaching various subjects and a common denominator is that they were all granted tenure and/or regular status by former Secretary of Education César Rey Hernández.  (Docket No. 1, Complaint, at 4, ¶¶ 7, 10, at 5, ¶ 14.)  That status was granted due to a lack of teachers in certain special areas such as English, mathematics, science, drama and other courses.  (Id. at 4, ¶ 9.)  Unlike the conditions for holding other certificates, the awarding by former Secretary Rey of an Alternate Teachers Certificate did not include and/or impose any condition for conferring such status.  Nevertheless, the two-year unconditional Rey resolution did not eclipse the five-year Fajardo resolution by creating a property right based on an Alternate Teachers Certificate which is no longer extant.

Plaintiffs urge that the Department of Education discriminated against them because of their association with the Federación de Maestros, an impermissible discrimination against which they are protected by the First Amendment.  However, aside from the hint of skullduggery which may arguably be skimmed from the evidence presented, I cannot conclude that plaintiffs will probably prevail on the

CIVIL 06-1044 (JAG)                    28

First Amendment prong of their civil rights action based upon their being members of the Federación. Aida Díaz Rivera, the President of the Asociación de Maestros as of January 9, 2001, testified that 67 teachers were dismissed in 2005. She met with 59 of the 67 teachers. Not all are members of the Asociación. Analogously, that a teacher attend activities of two labor organizations or that the teachers belong to a particular labor organization, and that the government might or might not be associated with another labor organization, provides the very gossamer ingredient which is insufficient for the court to draw a reasonable inference that the defendants had an impermissible motive for discharging the plaintiffs who are yet unemployed. By analogy, in an unveiled political discrimination case, a plaintiff's burden cannot be met by testifying that he is a member of the PNP, that the defendant is a member of the PPD, and that an adverse action occurred as a result, such as being dismissed after election. See, e.g., Kauffman v. P.R. Tel. Co., 841 F.2d at 1172; Martínez Cruz v. Lausell, 692 F. Supp. 48, 51 (D.P.R. 1988); Hernández Acevedo v. Aponte Roque, 684 F. Supp. 18, 21 (D.P.R. 1988); Carrasquillo v. Aponte Roque, 682 F. Supp. 137, 141 (D.P.R. 1988). "[P]roviding self-serving conclusions that defendant was motivated by discriminatory animus is not enough to state a constitutional claim." Román v. Delgado Altieri, 371 F. Supp. 2d 7, 9 (D.P.R. 2005). In the First Circuit, it has been consistently held that "[m]erely juxtaposing a protected characteristic–someone else's politics–with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir. 1990), overruled on other grounds, 367 F.3d 61 (1st Cir. 2004), cited in López Sánchez v. Vergara-Agostini, 359 F. Supp. 2d 48, 54-55 (D.P.R. 2005). Notwithstanding plaintiffs' allegation that they organized and participated in activities against the actions taken by the defendants, and their participation was

CIVIL 06-1044 (JAG)                        29

acknowledged by the defendants, even if that were to have been proven during the evidentiary hearing, and certainly it was subject of the proffer, such evidence would still be insufficient for the drawing of a reasonable inference that the adverse action was the direct result of such activities or association.  Plaintiffs argue that 15 plaintiffs have been called back to work and that there is no reason why the remaining plaintiffs should not similarly be recalled to work.  They argue that the reason these have not been recalled is that they filed this civil action.  They argue that the factual situation of each plaintiff is the same.  Thus rehiring should be ordered by the court.

There was no evidence presented of proportionality, no evidence that only non-Federación teachers failed to be rehired and considering the proportion of teachers receiving the Alternate Teachers Certificate, 1,600, and the ultimate number unemployed by the Department of Education today, 17 out of the 32 plaintiffs,[20] it is difficult to conclude that plaintiffs have a probability of prevailing on their First Amendment association allegation.  There is no evidence that only the remaining 17 participated in activities against the action of the Department of Education.  Furthermore, while plaintiffs may be similarly situated considering one or more factors, they also have individual circumstances, and are at differing stages in their requirements which does not permit the court to treat them all identically for purposes of ultimate relief.  Examples of this lack of identity of circumstances are a G.P.A below 2.50, a number of missing credits in the required concentrations, and expired bar examinations.  The allegations that all plaintiffs are the victims of tit-for-tat retaliation are at best conclusory.

_____

[20]For example, plaintiffs Glorimar Ojeda Cruz, María Z. Burgos Corcino, María M. García de Quevedo, Luis Berríos Arzuaga, and Hilda Reyes Colón are working.

CIVIL 06-1044 (JAG)                    30

Finally, in a First Amendment claim, plaintiffs must show that their conduct (or association) was a motivating factor in the adverse employment action. Once that is established, the burden shifts to the defendants to show that the adverse employment action would have been made anyway regardless of the protected conduct. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Borges-Colón v. Román-Abreu, 438 F.3d 1, 9 (1ˢᵗ Cir. 2006); López Sánchez v. Vergara Agostini, 419 F. Supp. 2d 78, 85 (D.P.R. 2006). Considering the dearth of evidence related to the causation requirement of the adverse employment conduct, I cannot find that the association of the plaintiffs with, or membership in, a particular labor organization was a motivating factor in the actions of the defendants. However, even if the association would have been a motivating factor, it is clear that the result would have been the same and that all similarly situated teachers would have been discharged on December 28, 2005. Therefore, plaintiffs do not have a probability of success on the merits in relation to the First Amendment claim. Considering that plaintiffs do not have a cognizable property interest in continued employment as teachers since their Alternate Teachers Certificates have expired, and were probably null from the beginning, there is no Fourteenth Amendment violation of their right to due process. At best, with the evidence I have heard at the hearings, the outcome of plaintiffs' action is uncertain.

(2) Potential for Irreparable Harm if the Injunction is Denied

The second prong in the preliminary injunction analysis requires the court to assess the potential irreparable harm to the movant should the injunction be denied. An injury will only be considered irreparable if no adequate remedy for the injury exists at law. See Río Grande Cmty. Health Ctr., Inc. v. Rullán, 397 F.3d 56, 76 (1ˢᵗ Cir. 2005); Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1ˢᵗ Cir.

CIVIL 06-1044 (JAG)                    31

1986); see also 11A Charles Alan Wright et al., Federal Practice and Procedure §
2948.1, at 149-51 (2d ed. 1995). Monetary damages are generally not considered
irreparable injuries. See DeNovellis v. Shalala, 135 F.3d at 64 ("[A] temporary loss
of income which may be recovered later does not usually constitute irreparable
injury."). Evaluating irreparable harm and its likelihood of success on the merits
must be considered together. The greater the likelihood of success on the merits, the
less the required showing of irreparable harm. "[W]hen the likelihood of success
on the merits is great, a movant can show somewhat less in the way of irreparable
harm and still garner preliminary injunctive relief." E.E.O.C. v. Astra U.S.A., Inc.,
94 F.3d 738, 743 (1st Cir. 1996). "The loss of First Amendment freedoms, for even
minimal periods of time, unquestionably constitute irreparable injury." Romero
Feliciano v. Torres Gaztambide, 836 F.2d 1, 4 (1st Cir. 1987). However, the factor
of irreparable injury weighs less if one considers that in seeking equitable relief, a
party's interest is weighed by its actions as well as by its inactions, and also that a
party has an obligation to mitigate its own damages. Evidence, uncontroverted for
purposes of equitable relief, was presented during the hearing that reflected the
defendants' willingness to negotiate with plaintiffs in relation to being reinstated to
teaching positions. The Secretary testified that the Department was willing to
negotiate, to help the teachers finish their studies. This offer was made to all 67
teachers receiving the dismissal letters. Indeed, 20 returned after being evaluated
and were reinstated because they each had a plan to receive a regular certificate.
Regardless of whether or not plaintiffs might be reinstated to their exact positions
at the same salary or suffer a change of status in the negotiation process, such a
possibility and the lack of evidence reflecting some unemployed plaintiffs' seeking
this path does not suggest that the injury suffered is irreparable. Indeed, it reflects

CIVIL 06-1044 (JAG)                    32

that some plaintiffs have the opportunity to repair some of their damages and have not thereafter made the attempt.

Furthermore, it is difficult to determine that the injuries are irreparable since there are administrative and judicial avenues of redress in the Commonwealth system, including a binding collective bargaining agreement with the labor organization which represents their interests, and in the event that such avenues of redress are not successful or have been shown to be futile, plaintiffs can then seek injunctive redress in this court but only if they show that they have a property interest in continued employment under state law and that such interest was affected because of their association with the Federación de Maestros.  Article 34 of the Collective Bargaining Agreement contains a grievance procedure for members seeking redress.  (Exhibit J.)[21]  See, e.g., Morales-Vallellanes v. Potter, 339 F.3d at 15-18.

Therefore, a weighing of the evidence relating to irreparable injury, particularly when considering that plaintiffs do not have a strong probability of prevailing on the merits, results in the distinct conclusion that plaintiffs' injuries are not beyond repair in law.

It has clearly not been shown that available state remedies are futile and that they would not result in full redress if plaintiffs were to prevail, although those proceedings are more limited in scope and remedy than those available in this case. See Hiraldo Cancel v. State Ins. Fund Corp., 326 F. Supp. 2d 286, 292-93 (D.P.R. 2004).

---

[21]The defendants argue that the claims are barred by collateral estoppel and res judicata but I do not discuss these doctrines because I believe the issue of preliminary injunction is resolved without the need to consider them.  Furthermore, a related argument has been previously rejected.  Finally, the local court judgment relied on a lack of jurisdiction which leaves the preclusive effect of the judgment at very least questionable.

CIVIL 06-1044 (JAG)                      33

### (3) Balance of Relative Impositions

Plaintiffs' argument focuses on public school children that have been deprived of their protected right to receive an education and the violated constitutional rights of the discharged teachers.  "Weighing the hardships of each party is a fact-driven exercise."  Telerep Caribe Inc. v. Zambrano, 146 F. Supp. 2d 134, 145 (D.P.R. 2001). In deciding the balance of impositions, and weighing the relative hardships, there is a tendency to favor plaintiffs.  If not unexpectedly, plaintiffs were discharged on short notice and because some teachers have been re-employed after negotiating with the Department of Education, and because it is possible if not probable at this stage that the teachers could negotiate terms of employment with the Department of Education and could be re-employed, I find that the employment of 17 generally well-educated and experienced teachers, perhaps not yet Highly Qualified Teachers, is less of an imposition than the imposition of their losing continuous employment after a number of years of continuous employment in a position which is generally considered a career choice.  The argument focusing on public school children that have been deprived of their protected right to receive an education is not considered since there is no evidence that any children have suffered by the absence of these teachers, while there is evidence that there were Highly Qualified Teachers ready to be employed, which did not allow for application of any waiver to the No Child Left Behind Act.

Defendants argue that the No Child Left Behind Act conditions federal financial aid for schools on their meeting certain academic standards and abiding by policies established by the federal government.  See 20 U.S.C. § 6301(4).  A qualified teacher must staff every classroom.  Plaintiffs cannot comply.  However, relying on the words of the Secretary, and his willingness to talk to plaintiffs, if

CIVIL 06-1044 (JAG)                    34

solutions were reached with others, it is not at all uncertain that solutions could not be reached with these yet unemployed teachers.

(4) <u>Effect on the Public Interest</u>

The focus of the actions of the Department of Education was to comply with the requirements of No Child Left Behind Act and to correct what in the consideration of the current administration is a mistake in the appointment process conducted by another administration. While there is a veiled allegation that skirts a First Amendment issue, I find that it is not even colorable. The Department seeks to enforce a reasonable interpretation of its regulations after painstakingly reviewing the records of over 900 teachers, leaving slightly more than the 32 plaintiffs without employment based upon a reasoned determination to discharge them, regardless of whether the Department of Education is ultimately proven correct. While plaintiffs may or may not qualify for a waiver, the application of waivers generally rest with the discretion of the agency which implements or composes governing rules and regulations, and waiver are not favored in the Act.[22]

Some teachers that negotiated with the Department of Education returned to employment. The Department has not foreclosed negotiating with plaintiff teachers and is willing to sit with them in an attempt to reach a solution. There is no evidence or information that plaintiffs have done what other then similarly situated teachers have, that is, attempt to reach an acceptable solution and alternative to

---

[22]Assuming that the no waiver policy of the United States Department of Education allows for extending the rigid 2005-2006 deadline for added subjects of teachers in eligible rural areas, there is no requirement that the Secretary of Education seek such a waiver. Indeed, the waiver request would be required to describe how waiving the statutory or regulatory requirements would increase the quality of instruction for students and improve their academic achievement. <u>See</u> 20 U.S.C. § 7861(b)(1)(B).

CIVIL 06-1044 (JAG)                              35

unemployed status.  Under such circumstances, to issue an injunction against the government to implement what is probably an invalid focus on the rights of the remaining unemployed teachers goes against the public interest.  Furthermore, it is precisely because of the public interest in having Highly Qualified Teachers in the No Child Left Behind program that injunctive relief is not warranted under the fourth prong of the preliminary injunction standard.

                              CONCLUSION

It is at best uncertain and probably unlikely that plaintiffs will ultimately prevail because of their probable null and void appointments.  They all hold an Alternate Teachers Certificate which does not currently fit any definition in the state statute.  While a showing of injury has been made, normal for someone losing employment, particularly during the Christmas season, such injury is not irreparable and such repair is available not only through formal conversations, but also by judgment, including in this case.  While it would be less onerous for the Department of Education to employ these qualified, experienced teachers than for the teachers to continue unemployed, the public interest is best served by not enjoining the government from following a facially valid regulatory scheme in its mission to provide the best education possible, in keeping with the requirements of the No Child Left Behind Act and state law.  Therefore, I recommend that the motion for preliminary injunction be denied.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis

CIVIL 06-1044 (JAG)                          36

for such objections.  Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 24th day of May, 2006.


S/ JUSTO ARENAS
Chief United States Magistrate Judge